```
                        14 MAG 1579 ORIGINAL
Approved:  _____
           Negar Tekeei
           Assistant United States Attorney

Before:    HONORABLE JAMES C. FRANCIS
           United States Magistrate Judge
           Southern District of New York
```

- - - - - - - - - - - - - - - - - - x
                                     :   SEALED
UNITED STATES OF AMERICA             :   COMPLAINT  DOC # 1
                                     :
           - v. -                    :   Violation of
                                     :   21 U.S.C. §§ 812,
PATRICK KILCOYNE,                    :   841(a)(1), (b)(1)(C) &
                                     :   846
                     Defendant.      :
                                     :   COUNTY OF OFFENSE:
- - - - - - - - - - - - - - - - - - X   NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

   EDWARD GONZALEZ, being duly sworn, deposes and says that he is a Special Agent with the U.S. Department of Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE

   1.   From at least in or about June 2014, up to and including in or about July 2014, in the Southern District of New York and elsewhere, PATRICK KILCOYNE, the defendant, and others known and unknown, intentionally and knowingly, did combine, conspire, confederate, and agree together with each other to violate the narcotics laws of the United States.

   2.   It was a part and an object of the conspiracy that PATRICK KILCOYNE, the defendant, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

   3.   The controlled substances involved in the offense were (a) a quantity of alpha-pyrrolidinopentiophenone, commonly known as Alpha PVP, (b) a quantity of despropionylfentanyl, commonly known as Fentanyl, and (c) a quantity of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(C).

              (Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with HSI, and I have been involved in the investigation of the above-described offense. During my tenure with HSI, I have participated in investigations of unlawful drug traffickers and, among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations and drug records.

5. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents and reports of the investigation, criminal history records, and other records, and from my conversations with other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. Based on my conversations with an officer of the U.S. Customs and Border Protection ("CBP"), I have learned, in substance and in part, that, on or about July 1, 2014, CBP officers working out of John F. Kennedy International Airport in Jamaica, New York, advised agents of HSI and the Drug Enforcement Administration ("DEA") that a package, which was addressed to a recipient ("CS-1"[1]), at an apartment in the Bronx, New York, and had a return address in China ("Package-1"), contained a controlled substance. Specifically, on or about July 1, 2014 and July 7, 2014, CBP officers tested the contents of Package-1, which was being sent via TNT Express, a package delivery service, and determined that Package-1 contained approximately one kilogram of a substance that tested positively

---

[1] In or about July 2014, CS-1 was arrested by HSI Special Agents and prosecution was declined. Subsequent to CS-1's arrest, CS-1 began assisting this investigation in the hopes of avoiding prosecution. Information CS-1 has provided has been corroborated by independent evidence in this investigation, as detailed below, such as consensually-recorded telephone conversations, physical surveillance and a controlled delivery of narcotics.

for the presence of alpha-pyrrolidinopentiophenone, commonly known as Alpha PVP. CBP officers seized Package-1.

7. On or about July 7, 2014, agents of the DEA and HSI, including myself, delivered the Package to CS-1 at an apartment in the Bronx, New York (the "Apartment"). CS-1 answered the door. CS-1 signed for Package-1. CS-1 was then arrested. After CS-1 was arrested, law enforcement maintained custody of Package-1.

8. Based on my conversations with CS-1, I have learned, in substance and in part, the following:

    a. CS-1 was recruited by PATRICK KILCOYNE, the defendant, to receive parcels sent from outside of the United States. Prior to receiving Package-1, CS-1 had received parcels in the past and provided those parcels to KILCOYNE.

    b. KILCOYNE sold marijuana, Molly and other "designer" drugs.

    c. KILCOYNE had paid CS-1 to sell marijuana in the past.

    d. KILCOYNE had a personal assistant, a co-conspirator not charged herein ("CC-1"), who assisted KILCOYNE with ordering and receiving parcels.

9. On or about July 13, 2014, CS-1 provided me with a United States Postal Service ("USPS") re-delivery slip that indicated the USPS had attempted to delivery two parcels on July 12, 2014 to CS-1 at the Apartment, and that the parcels were being held at a post office in the Bronx, New York.

10. On or about July 14, 2014, I obtained the two parcels from a Postal Inspector with the United States Postal Inspection Service. Based on my review of the labels on the two parcels ("Package-2" and "Package-3," respectively), I determined that (a) Package-2 and Package-3 were addressed to CS-1 at the Apartment in the Bronx, New York, and (b) Package-2 had a return address in Canada and Package-3 had a return address in China.

11. On or about July 14, 2014, CS-1 provided written consent for law enforcement to search the contents of Package-2 and Package-3.

12. On or about July 14, 2014, a CBP lab technician ("Technician-1") tested the contents of Package-2 and Package-3.

3

Based on my conversations with Technician-1 on or about July 14 and July 15, 2014, I learned, in substance and in part, that Package-2 contained approximately a kilogram of a substance that tested positive for marijuana, and Package-3 contained approximately 10 grams of a substance that tested positive for Despropionylfentanyl, commonly known as fentanyl.

13. On or about July 14, 2014, CS-1 called PATRICK KILCOYNE, the defendant, at the direction of law enforcement. Law enforcement was present for the call and recorded the call using HSI recording equipment. I have listened to the recording of this telephone call and learned, in substance and in part, the following:

    a. KILCOYNE told CS-1 that KILCOYNE learned CS-1 had been arrested.

    b. KILCOYNE told CS-1 that KILCOYNE had CC-1 remove "all the stuff" from KILCOYNE'S apartment.

    c. KILCOYNE said he wanted CS-1 and CC-1 to "have the packages and everything so we can get ready to roll" when KILCOYNE returned.

    d. KILCOYNE wanted CS-1 to go to the post office and get the packages so that they would not be sent back to the senders.

14. On or about July 15 and July 16, 2014, at the direction of law enforcement, CS-1 exchanged text messages and telephone calls, which were recorded using HSI recording equipment, with CC-1 to arrange to deliver Package-1, Package-2 and Package-3 to CC-1. Based on my conversations with CS-1 and my review of those text messages and telephone calls, I have learned, in substance and in part, that CS-1 arranged to meet CC-1 at a residential building located on Leroy Street in Manhattan, New York, on July 16, 2014.

15. Based on surveillance conducted by Special Agents with the DEA and HSI, including myself, I know that, on or about July 16, 2014, CS-1, at the direction of law enforcement, delivered Package-1, Package-2 and Package-3 to CC-1. CC-1 was then arrested.

16. Following his arrest, a Special Agent with HSI ("Agent-1") advised CC-1 of his *Miranda* rights, CC-1 verbally waived those rights, and agreed to speak with law enforcement. Based on my conversations with Agent-1, and my participation in

a portion of the interview of CC-1, I know that CC-1 then stated, in substance and in part, the following:

      a. CC-1 believed Package-1, Package-2 and Package-3 contained narcotics;

      b. CC-1 knew that KILCOYNE ordered narcotics through the internet;

      c. From approximately June 2014 through the present, CC-1 had arranged for purchases of narcotics, at the direction of KILCOYNE, through the internet using bitcoins;

      d. KILCOYNE had previously discussed narcotics that could be purchased from China with CC-1; and

      e. At the direction of KILCOYNE, CC-1 had previously researched prices for purchases and sales of a controlled substance called "Alpha PVP."

    17. On or about July 16, 2014, CC-1 called PATRICK KILCOYNE, the defendant, at the direction of law enforcement. Law enforcement was present for the call and recorded the call using HSI recording equipment. I have listened to the recording of this telephone call and learned, in substance and in part, the following:

      a. CC-1 told KILCOYNE that CS-1 had come by and dropped off the boxes.

      b. In response, KILCOYNE said it was a "miracle," and asked if CC-1 had "all three of them." CC-1 responded yes.

    18. On or about July 18, 2014, CC-1 called PATRICK KILCOYNE, the defendant, at the direction of law enforcement. I was present for the call and recorded the call using HSI recording equipment. I have listened to the recording of this telephone call and learned, in substance and in part, the following:

      a. CC-1 told KILCOYNE that CC-1 had left the packages at an apartment for KILCOYNE.

      b. CC-1 asked if the packages were supposed to be heavy. KILCOYNE said one of them should be.

      c. CC-1 asked where CC-1 should leave the packages for KILCOYNE, and KILCOYNE responded that they should be left

5

wherever no one would be occupying the space. KILCOYNE told CC-1 to put the packages in the closet of an apartment.

        d.   CC-1 told KILCOYNE that two of the packages were from China, and one of the packages was from Canada. KILCOYNE responded that was correct. KILCOYNE said the "bud" was from Canada, and that the other "stuff" included the "fentanyl."

WHEREFORE, the deponent respectfully requests that a warrant issue for the arrest of PATRICK KILCOYNE, the defendant, and that he be imprisoned, or bailed, as the case may be.

*[signature]*
EDWARD GONZALEZ
Special Agent
U.S. Department of Homeland Security
Investigations

Sworn to before me this
21st day of July 2014

*[signature]*
HONORABLE JAMES C. FRANCIS
United States Magistrate Judge
Southern District of New York

6